| 169 | 529 |
| 32 SC | 355 |

## Martha Jane Irvin, Appellant, *v.* John Irvin.

*Contract—Illegality of contract—Divorce.*

It is not against public policy for a wife to enter into a written contract with a third person, for a valuable consideration, that in any proceeding she may institute against her husband for divorce she will not assign any other reason therefor than the desertion of her by her husband.

A wife having refused to join her husband in a deed of lands owned by her husband, subsequently entered into a written agreement with her husband's brother by which, in consideration of her joining in the deed, she was to be paid by the brother a certain sum of money. It was also stipulated that in any proceeding she might institute against her husband for divorce, she would not assign any other reason therefor than the desertion of her by her husband. Part of the money was paid in cash, and part by note. In a suit upon the note the brother offered evidence that at the time the note was executed there was a parol agreement by the wife that the note was not to be paid until she had prosecuted to successful issue divorce proceedings against her husband. *Held,* that as the written agreement contained a sufficient consideration to sustain the note, the defendant could not set up the parol contract, although against public policy, to defeat the agreement.

In such a case the integrity of the established written contract could not be affected by what, if true, was a collateral undertaking to do an unlawful act. The written contract did not rest on a vicious consideration, which struck at the contract itself so that it never had a legal entity. It rested on a perfectly good consideration, wholly independent of the merely collateral promise. No verdict against the contract could on such evidence be sustained.

Argued April 23, 1895. Appeal, No. 35, Jan. T., 1895, by defendant, from judgment of C. P. Clearfield Co., Feb. T., 1890.

No. 163, on verdict for plaintiff. Before Sterrett, C. J., Green, Mitchell, Dean and Fell, JJ. Affirmed.

Assumpsit on a written contract.

The facts appear by the opinion of the Supreme Court.

When Cyrus Gordon was on the stand he was asked this question :

Q. " State, Judge Gordon, whether or not at the time the note was delivered to you as custodian it was to be held by you until a condition was complied with, and was not to become the property of the plaintiff in this suit until that condition was complied with."

Mr. Peale : " Objected to, as not cross-examination."

By the Court: " We think it is not cross-examination. It is an introduction into this case at this stage of a defense which we will not admit. Exception, and bill sealed for defendant." [1]

" The defendant offers, before the note now offered in evidence and the objection thereto is passed upon, to ask Judge Gordon, in whose custody the note now is and who has produced the same in court,

"1st. Whether or not at the very time the note was deposited with Murray & Gordon in escrow as custodians for the parties, Martha Jane and John Irvin, there was a written agreement made and signed by them, Murray & Gordon, and given to John Irvin, by which written agreement or paper a condition was attached to said note, and to prove that this condition has not been complied with, and therefore the plaintiff is not entitled to sue upon the note or offer it in evidence.

" This for the purpose of showing on cross-examination the res gestæ surrounding the delivery of the note in escrow, and the incidents surrounding the making of the escrow ; and that it never was delivered."

Plaintiff's counsel object to the foregoing question, because,

" 1st. It is not proper cross-examination.

" 2d. That John Irvin, the maker of the note in question, could not in placing in the hands of the custodians attach other conditions than conditions in the written agreement of Sept. 11, 1884.

" 3d. That the written agreement of September 11, 1884,

specifies that Martha Jane Irvin is to receive six thousand dollars in consideration of her performance of the three stipulations set forth. It is objected that no other terms or conditions however expressed can now be put in evidence upon cross-examination."

Objections sustained, offer overruled, and bill sealed. [2]

"The defendant proposes to prove by the witness on the stand, Judge Cyrus Gordon, and by other witnesses and by papers in writing, the following facts :

"1st. That on the 11th day of September, 1884, and contemporaneously with the making and execution of the agreement of that date between Martha Jane Irvin and John Irvin, it was agreed upon by Messrs. Murray & Gordon, acting as attorneys for Martha Jane Irvin, and Messrs. Orvis & Snyder, acting as attorneys for John Irvin, that the defendant upon the execution and delivery of the second deed called for in said agreement of Sept. 11, 1884, should pay therefor the sum of $1,000 to Murray & Gordon, and that no more should be paid under said agreement until the said Martha Jane Irvin had, by proceedings to be begun by her, procured a divorce from her husband, James A. Irvin ; that she was fully acquainted with this contemporaneous agreement before she executed the written agreement and assented fully to the same, and in pursuance thereof did on the 11th day of September, A. D. 1884, make affidavit to her petition for divorce before the then judge of the court of common pleas of Clearfield county, and that on the 13th day of September, 1884, a subpœna sur divorce was awarded and issued on the 24th day of September, 1884. That it was distinctly agreed that the consideration for the divorce was the further payment of the sum of $4,000, mentioned as part of the consideration in the agreement of the 11th of September, 1884, and that no part of the $4,000 was to be paid by the defendant until the decree in the divorce proceeding was entered, and that a paper in writing was on the same day, viz, the 11th of September, 1884, agreed upon between Murray & Gordon, attorneys for Martha Jane Irvin, and Orvis & Snyder, attorneys for John Irvin, in which the aforesaid consideration for the $4,000 note and the purpose of placing said note in custody of Murray & Gordon were set forth, which paper in writing it was agreed should be signed by the attorneys of said

Martha Jane Irvin, when the $4,000 note was given, and delivered to John Irvin. That to secure the payment of the $4,000, when the divorce was obtained, it was agreed in said contemporaneous agreement of the 11th of September, 1884, that John Irvin would make his negotiable promissory note with an indorser satisfactory to said attorneys of Martha Jane Irvin for the $4,000, and make the same to fall due and become payable at a date that the same could be delivered to said plaintiff after a decree in divorce was entered and before maturity of the note, in order that the same could be discounted or transferred to a third party for a bona fide consideration. That the said contemporaneous agreement was an important and material part of the agreement and settlement made on the 11th of September, 1884, and was the inducing cause of John Irvin entering into and signing the agreement of September 11, 1884, and that without this contemporaneous agreement he would not have signed the written agreement.

" 2d. That after the execution of the agreement by John Irvin and the payment by him of the sum of $1,000 for the deed for the "Elk Lick" tract, and after making her petition and having a subpœna in divorce awarded, and after the appointment of a commissioner to take testimony therein, the said Martha Jane Irvin refused to proceed further to perform her part of the written agreement as well as the contemporaneous parol agreement, and persisted in said refusal until the 28th of March, 1885, when she notified her counsel to proceed with her application for divorce, and notified them in writing of her willingness to carry out the agreement made with John Irvin, not only as to the part in writing, but also as to the part not in the writing of the 11th of September, 1884, signed by the plaintiff and defendant, but in the paper agreed upon on the same day, and which was to be signed, relating to the divorce. That upon the receipt of this written authority and direction, her attorneys notified the attorneys of John Irvin of her willingness to carry out the previous agreement of the parties and their attorneys, and that thereupon the said Martha Jane Irvin through her attorneys did agree in writing that upon the payment by John Irvin of $1,000 that the second deed should be delivered as called for by the written agreement of the 11th September, 1884, but that the said attorneys would hold said

$1,000, and not pay over the same until such time as the said Martha Jane Irvin delivered up peaceable possession of certain premises then occupied by her, and at the same time the said Martha Jane Irvin through her attorneys agreed in writing to receive for the remaining $4,000 mentioned in the written agreement of the 11th of September, 1884, and for which a note was to be given, indorsed by some one to be approved of by her attorneys; a note of John Irvin indorsed by Annie M. Irvin for $4,000, bearing date the 8th of October, 1884, with interest from the 1st of December, 1884, under the stipulation and agreement set out in the writing that the said note was not to be delivered to the said Martha Jane Irvin until she obtained a decree of divorce from James A. Irvin. That upon the making of said papers in writing John Irvin paid the sum of $1,000 to the attorneys of Martha Jane Irvin, and also made and delivered to them the note of $4,000, upon which this suit is brought. That the second deed was then delivered as agreed upon, but that the plaintiff did not deliver peaceable possession of the premises called for until long afterwards, and never did procure the divorce she agreed to up to this date. This for the purpose of showing that the consideration for the $4,000 is illegal and against public policy. And also for the further purpose of showing that the note placed in escrow with a condition attached thereto has never become the property of the plaintiff, and that she is not entitled to have the delivery thereof nor maintain the present action thereon."

Plaintiff's counsel object to the foregoing for the following reasons:

"1st. That the proposed parol evidence is inconsistent with the written agreement. Where the illegal consideration referred to does not appear on the face of the writing but is interposed by way of defense as in this action, the defendant becomes the actor, and the rule in pari delicto applies against him and not in his favor.

"2d. That parol evidence of other matter in conflict with that contained in the written agreement between the parties made on the 11th of September, 1884, is inadmissible to defeat recovery in this case.

"3d. That the evidence offered by the defendant being all parol and offered for the purpose, as the offer sets forth, of

proving an illegal consideration and coupling it with the legal consideration expressed in the written agreement in order to defeat the consideration named in the agreement, it is irrelevant and inadmissible to affect the rights of the plaintiff.

"4th. That valuable dower rights having been conveyed by the plaintiff to the defendant in pursuance of the agreement of the 11th of September, 1884, and the covenants of said agreement having been substantially performed by the plaintiff, the defendant is estopped from introducing parol proof of an illegal consideration for the purpose of defeating recovery of the consideration money named in said contract and reiterated in said deeds conveying the dower rights of the plaintiff.

"5th. That it is not alleged or proposed to be proved that the parol matter offered was omitted from the written agreement by fraud, accident or mistake.

"6th. The proposed testimony is in direct conflict with the written agreement and is offered for the express purpose of destroying said written agreement so far as the plaintiff's rights are concerned, and is therefore inadmissible, the agreement being clear, precise and explicit in its terms, and by the term 'foregoing' making the whole consideration apply to the performance by the plaintiff of the three stipulations preceding."

The Court: "In view of the opinion of the Supreme Court when this case was before it, reported in 142 Pa. 283, etc., when substantially the same propositions that are now embraced in the offer were before it, and the law elsewhere laid down affecting the subject, we deem it our duty to refuse the pending offer. The objections are therefore sustained and the proposed evidence excluded." Exception and bill sealed. [3]

"The witness on the stand, Thos. H. Murray, Esq., who testifies that he was a member of the firm of Murray & Gordon, having been shown papers and identifying them as signed by them at the time when they were attorneys for Martha Jane Irvin, the plaintiff in this case, it is now proposed to ask the witness whether or not these papers were signed by them and delivered to John Irvin, the defendant, at the very time when the $1,000 was paid for the second deed mentioned in the agreement of 11th September, 1884, and at the time when the deed was delivered, executed by Martha Jane Irvin to John Irvin, by them acting as her attorneys; and also to ask the witness

when the note for $4,000, signed by John Irvin and indorsed by Annie M. Irvin, dated Oct. 8, 1884, and delivered on the 24th day of April, 1885, was delivered to them as custodians, a receipt or paper, the form of which was agreed on the 11th of September, 1884, was delivered to John Irvin or his attorneys, to be followed by two papers referred to and to be offered in evidence herewith, for the purpose of showing that the consideration of the second deed was $1,000, and that the note for $4,000 was not to be delivered to the plaintiff until she had procured a divorce from her husband, and that the true consideration for the $4,000 note was the procuring of a divorce from her husband, James A. Irvin."

Objected to by plaintiff's counsel, because :

"1st. The alleged purpose is to contradict the second deed, which contains as consideration the words '*Five*' thousand dollars.

"2d. The proposed testimony would be in conflict with the written agreement of the 11th of September, 1884, and is offered for the purpose of destroying the written agreement so far as the rights of the plaintiff are concerned.

"3d. The proposed testimony being in parol is not competent to substitute a different consideration or to impose new consideration in conflict with said written agreement, the said agreement having been fully performed according to its written terms by the plaintiff.

"4th. That the offer (and the alleged purposes thereof) is ambiguous and confused.

"5th. Irrelevant."

Plaintiff hereby renews the objections made by her to the defendant's first general offer.

The offer is overruled and the evidence excluded. Bill sealed. [4]

"Thos. H. Murray, witness on the stand, having testified that he was a member of the firm of Murray & Gordon, and that they were attorneys for Martha Jane Irvin, the plaintiff in this case, it is now proposed to ask the witness whether or not at the time the note of $4,000 in suit was delivered to them as custodians, they delivered to John Irvin, or his attorneys, Orvis & Snyder, a paper dated 24th April, 1885, and identified by the witness, and whether or not the terms, conditions and words

of that paper now offered were agreed upon on the 11th of September, 1884, when the agreement offered by plaintiff was reduced to writing and contemporaneous therewith, and in connection with this testimony to offer the writing in evidence. And also to ask the witness and Judge Gordon, his partner, whether or not the fact that as a part consideration for the payment of $6,000 mentioned in the paper of the 11th of September, 1884, that she, the plaintiff, was to secure a divorce from her said husband, and whether or not she assented thereto. To be followed by the paper identified by the witness. This for the purpose of showing that a part consideration of the agreement of the plaintiff was that she was to procure a divorce from her husband and that the $4,000 was to be paid therefor, and the note was not to be her property until this stipulation was complied with."

Plaintiff's counsel objected. The offer was overruled, the testimony excluded, and bill sealed. [5]

Verdict and judgment for plaintiff for $6,330. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions.

*David L. Krebs, Wm. Patterson,* with him, for appellant.— The first and second assignments of error involve the question of what is proper cross-examination. We affirm that if the question asked related directly to the res gestæ of the transaction, the fact that it may introduce the defense to the plaintiff's claim, does not make the question improper cross-examination: Markley v. Swartzlander, 8 W. & S. 172; Bank v. Fordyce, 9 Pa. 275; 1 Wharton on Evidence, sec. 529; Hughes v. Coal Co., 104 Pa. 207.

Wherever a contract grows immediately out of, and is connected with an act to be done which is against public policy, the contract is itself illegal and void, no matter how ingeniously drawn to conceal the illegal part: Kilborn v. Field, 78 Pa. 194; Armstrong v. Toler, 11 Wheaton, 258; Johnson v. Hulings, 103 Pa. 498; Holt v. Green, 73 Pa. 198; Ham v. Smith, 87 Pa. 63; Bredin's App., 92 Pa. 241; Pierce v. Wilson, 101 Pa. 14; Avery v. Layton, 119 Pa. 604; Filson v. Hines, 5 Pa. 452.

Parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change or reform the instrument, and though omitted not by fraud, accident or mistake: Ferguson v. Rafferty, 128 Pa. 337; Walker v. France, 112 Pa. 203; Philips v. Meily, 106 Pa. 536; Hoffman v. R. R., 157 Pa. 175.

That the condition attached to a contract, either in writing or orally, when placed in escrow may be shown is clearly warranted by the authority of the following cases: Carpenter v. Nat. Bank, 106 Pa. 170; Altoona Bank v. Dunn, 151 Pa. 228; Randolph, Coml. Paper, sec. 228.

*Frank Fielding, Oscar Mitchell* and *S. R. Peale* with him, for appellee.—The evidence as to the alleged parol contract was properly excluded: Adams v. Grey, 154 Pa. 258; Swan v. Scott, 11 S. & R. 155; Evans v. Dravo, 24 Pa. 62; Hendrickson v. Evans, 25 Pa. 441.

When parties without fraud or mistake have put their engagements in writing, that is not only the best, but the sole evidence of their agreement: Barnhart v. Riddle, 29 Pa. 92; Lewis v. Brewster, 57 Pa. 410; McClure v. People's Freight Ry., 90 Pa. 269; Smith v. Nat. Life Ins. Co., 103 Pa. 177; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519; Rowand v. Finney, 96 Pa. 192; English's App., 119 Pa. 533–538; Jessop v. Ivory, 158 Pa. 71–77; Hoffman v. R. R., 157 Pa. 174–197; Wodock v. Robinson, 148 Pa. 503, 504; Stull v. Thompson, 154 Pa. 43–45; Sanders v. Sharp, 153 Pa. 555–568.

If any part of an offer made to the court contains what is not relevant to the issue trying, the court has a right to reject the whole: Heath v. Slocum, 115 Pa. 549; Citizens' & Miners' Savings Bank v. Gillespie, 115 Pa. 564.

OPINION BY MR. JUSTICE DEAN, July 18, 1895:

Plaintiff's suit, when brought at first, was founded upon a note, of which the following is a copy:

"$4,000.              CURWENSVILLE, PA., Oct. 8th, 1884.

"On or before November 1st, 1885, after date, I promise to pay to the order of Annie M. Irvin four thousand dollars at County National Bank, Clearfield, Pa., value received, with interest from December 1st, 1884.

                     (Signed)      "JOHN IRVIN
                     (Indorsed)    "ANNIE M. IRVIN."

Plaintiff claimed to be the owner of the note, with the right to sue thereon; this was denied by the defendant.

The plaintiff is the wife of James A. Irvin, who is a brother of John and Jared F. Irvin; before and at the date of the note, they had been doing business as John Irvin & Brothers, at Curwensville, Clearfield county. At the time, they owned a tract of about six hundred acres of timber land, known as " The Elk Lick " tract, as tenants in common; for this, they were offered $150,000; the price was deemed a good one, and they were anxious to sell; shortly before this time there had arisen domestic difficulties between James A. and his wife, Martha Jane, this plaintiff, and she refused to join her husband in the execution of a deed to the purchaser, and the sale was imperiled. Her husband, then, for the purpose of divesting his wife's interest, confessed a judgment to his sister, Annie M. Irvin; on this, execution was issued, and his interest in the land levied on; thereupon, the wife filed a bill in equity against her husband, his sister and the sheriff, averring, that as to her the proposed sale was collusive and fraudulent, with the intent to divest her right of dower in her husband's land; the court awarded a preliminary injunction, restraining the sheriff from proceeding with the sale. Some months after this, negotiations for harmony between the husband and wife were opened, and these resulted in a written contract between her and John Irvin, dated the 11th of September, 1884. Afterwards, by amendment, the suit was based on this contract. By this paper the wife agreed:

1. She would convey all her right in the Elk Lick tract to the purchaser. 2. That she would, within twenty days, convey to John Irvin, brother of her husband, all her right and title in all the remaining real estate of her husband, and in all his personal property, excepting only the personal property in the house wherein she then resided. 3. That she would, on or before December following, deliver up possession of the premises where she lived. 4. That, within twenty days, she would discontinue the equity suit to restrain the sheriff from selling the interest of her husband in the Elk Lick tract.

As a consideration for all this, John Irvin agreed: 1. To pay her $6,000, installments of $1,000 in hand; $1,000 in twenty days, when she delivered the second deed, and $4,000 on the

1st of November, 1885, for which last payment he was to give his negotiable promissory note, with interest from November 1, 1884, and with indorser approved by Murray & Gordon, the wife's attorneys; the note to be delivered to the attorneys as custodian for the parties to the agreement. 2. To pay to her $3.00 per week from the date of the agreement until December 1st, following, and further, to pay all the docket costs in the equity suit. 3. To procure for her a formal transfer of the personal property in the house where she lived.

Then follows this final stipulation by her: " Said Martha Jane Irvin agrees, that in any proceeding she may institute against her husband for divorce, she will not assign any other reason therefor, than the desertion of her by her husband."

In fulfillment of her agreement, she joined her husband in the deed of the Elk Lick tract, and was paid the $1,000. She also at once commenced proceedings for divorce against her husband on the grounds of desertion.

The second deed was prepared, also note for $4,000, with an approved indorser, as well as formal transfer of the personal property, all of which, with the $1,000 in money, were tendered her at the expiration of the twenty days, the deed for execution, the note, transfer, and money for her acceptance, but, for some reason, she then declined to do either. But on March 28, 1885, she concluded to carry out her agreement, and delivered this paper to her attorneys:

" CLEARFIELD, PA., March 28th, 1885.

" This is to certify, that after having considered the propriety of carrying out the arrangement in writing made with John Irvin in September last, and after consultation with my friends and other counsel, I have definitely determined to carry out the same, and I hereby authorize my said attorneys, Murray & Gordon, to discontinue the equity suit, proceed forthwith with the divorce case, and in all respects carry out the agreement according to its tenor and effect. " MARTHA JANE IRVIN."

Then, on the 24th of April, 1885, she executed the second deed, and received the second $1,000, and the bill of transfer of the personal property. At the same time, the note on which this suit was first instituted, indorsed by Annie M. Irvin, her

husband's sister, was delivered to her attorneys, Murray & Gordon, and they thereupon delivered to him this receipt:

" This is to certify, that we have this day had and received from John Irvin, his negotiable promissory note, dated October 8th, 1884, for four thousand dollars, with interest from December 1st, 1884, indorsed by Annie M. Irvin. The same being received by us and delivered to us as custodians, in pursuance of an arrangement made Sept. 11th, 1884, when a certain agreement was made between Martha Jane Irvin, wife of James A. Irvin, and said John Irvin, by which we are to hold the same until such time as said Martha Jane Irvin, shall have procured a divorce from the bonds of matrimony without alimony from her said husband, and not to deliver the same to said Martha Jane Irvin until said divorce shall be obtained, provided that her procuring or obtaining said divorce, is not hindered, delayed or defended against by said James A. Irvin, and she shall, after proper exertions on her part, be prevented from obtaining it prior to November 1st, 1885.

" Witness our hands and seals this 24th April, 1885.

" MURRAY & GORDON."

It will be noticed, this paper is dated more than six months after the agreement, and is not signed by her.

Nothing further was done; afterwards, there was a reconciliation between the husband and wife, and for a considerable time they lived together, but again separated. The note was not delivered to her by her attorneys. The suit was brought December 31, 1889, on the note, but as already noticed, afterwards, on September 17, 1890, the plaintiff amended her statement, and based her right to recover on the agreement of 11th of September, 1884. The case first came on for trial in the court below, September 21, 1890. The plaintiff then offered in evidence the agreement, and proof of the execution and delivery of the deeds, discontinuance of the equity suit, and surrender of the premises in which she had lived, then called Mr. Gordon, one of her attorneys, as a witness to the agreement. When on the stand, on examination as a subscribing witness, he produced the note as the one referred to in the contract. Then the court, against the objection of plaintiff's counsel, permitted defendant's counsel to cross-examine him as

to the circumstances attending the giving of the note, the nature and extent of the attorneys' custody; he stated, that part of the contract was, they were to hold the note until the wife had procured a divorce, provided the husband made no defense to it. The cross-examination further elicited evidence of a parol understanding or agreement, at variance with the written one, and contradictory of it.

The defendant, having offered in evidence the paper signed by the wife, dated March 28th, and the receipt by her attorneys of April 24, 1885, rested. And thereupon the court, being of opinion that as a part of the consideration for the defendant's contract was a stipulation by the wife that she would procure a divorce, the contract was void as against public policy, directed, peremptorily, a verdict for defendant.

On appeal by plaintiff to this court, the judgment was reversed,—see 142 Pa. 271. There were thirty-two assignments of error, but the reversal was on these grounds: 1. It was error to permit defendant to inject his defense by a cross-examination of plaintiff's witness, called to testify to the written agreement. 2. That the testimony thus introduced was in direct contradiction of the written instrument, and there being no allegation of fraud, accident or mistake, was not admissible. On these two points, the judgment was reversed, although there is a very strong intimation by PAXSON, C. J., who rendered the opinion, that even an attempt by defendant, in an orderly way, to have set up an unlawful or immoral transaction to which he was a party, as a defense to his obligation, would not have availed him. The case having again come on to trial in the court below, plaintiff offered and read the agreement of 11th of September, 1884, and gave evidence of the discontinuance of the equity proceedings, the execution and delivery of the two deeds, also the surrender of possession of the house, and the $4,000 note, and rested.

The defendant then offered evidence to show a parol agreement between the counsel of the wife and John Irvin's counsel, with her consent, that when the second $1,000 was paid no more should be paid until the wife had procured a divorce, and that the $4,000 note was not to be surrendered to her until the decree of divorce was entered; that the contemporaneous parol agreement was the sole inducement to John Irvin's executing

the written one. This for the purpose of showing, that plaintiff had no right to the possession of the note for institution of suit, and that the contract was void as against public policy.

To this offer, plaintiff objected, and the court overruled it. Defendant then offered the two papers, dated respectively the 28th of March, and the 24th of April, 1885, which on objection by plaintiff were also rejected, and the court directed a verdict for plaintiff for the $4,000, with interest; hence, we have this appeal by defendant. He assigns five errors, but they are practically three. The first two were settled by the decision of the court, when the case was here before. The defendant could not introduce his defense by a cross-examination of plaintiff's witness, called merely to prove and identify papers. We could add nothing to what was so concisely said by Chief Justice PAXSON, in his opinion on that point.

As to the third assignment, the rejection of the offer to prove there was a parol contract, by which the $4,000 note was not to be delivered to plaintiff by her attorneys until she had procured a decree of divorce, the preliminary question for the court was, had the plaintiff made out, clear of any taint of illegality, a contract by defendant to pay her $4,000?

It will be noticed, she offered in evidence the agreement of 11th of September, 1884. There is no semblance of an illegal consideration in this agreement. She only expressly stipulates, she will not assign any other cause for the divorce than desertion. In this, there was not only nothing unlawful, but there was nothing discreditable to either. From the very fact of excluding other causes, there is a fair implication that the husband was conscious of the existence of others involving graver moral turpitude than desertion; a sense of shame in him still remained, and there was a willingness on her part to suppress that which would be disgraceful to him, and annoying to his brothers and sisters. This is all that can possibly be inferred, from this particular stipulation, while all the other parts of the agreement bear witness to a perfectly good consideration. He owned very valuable lands, which it was impossible to dispose of at a satisfactory price unless she joined in the deed. This she agreed to do for the consideration of $6,000. She then, by formal seal and acknowledgment, releases her interest in the Elk Lick tract, for the consideration of $1,000, and her interest

in sixteen other tracts for the consideration of $5,000, the two making the $6,000 consideration named in the agreement. She offered proof that afterwards she surrendered possession of the house she lived in, and discontinued the equity suit to restrain her husband from selling the land. She then offered evidence to identify the note delivered to her attorneys, and put it in evidence and rested. How stood the case now? She had shown a perfectly valid contract with her husband's brother, by which she, for a valuable consideration, $6,000, had agreed to part with a right, worth, in case she survived her husband, far more than she was to get; this right, by two formal deeds, she proved she had relinquished; she had not procured a divorce from him, but this she had not agreed to do; she had instituted proceedings, which were then pending, in which she assigned but the single cause, desertion. Her case was complete in every particular, and up to this stage entitled her to a verdict.

What is the defense? That the consideration for the $4,000, in part, was the procuring by her of a decree of divorce, and therefore the contract is avoided.

As to this, the contract could not be reformed by interpolating the alleged suppressed consideration. While it is settled, that when by fraud, accident or mistake, a material stipulation has been omitted from an instrument, equity will reform it, it will not do so when the omission is intentional. No chancellor would listen an instant to such a plea.

But it is alleged, the parol contract stipulated for an unlawful consideration on part of plaintiff, and therefore it would be against public policy to enforce the contract on her behalf.

The rule invoked is well settled, and was recognized long before Collins v. Blantern, 2 Wilson, 341, decided in England as early as 1765; that case, only more clearly defined and sustained it, by reasons, which, though often assailed, have been but little shaken by professional and judicial criticism since. There, the suit was on a bond for seven hundred pounds; the instrument, while lawful on its face, had been corruptly given to stifle a prosecution for perjury. The action was debt, and the plea special, setting out the unlawful consideration as a defense. The plaintiff demurred, and judgment was entered for defendant. WILMOT, C. J., saying: "The present condition is for the payment of a sum of money, but that payment to be

made, was grounded upon a vicious consideration, which is not inconsistent with the condition of the bond, but strikes at the contract itself, in such manner as shows, that, in truth, the bond never had any legal entity," and the opinion closes in these words: "We are all of the opinion, that judgment may be for defendant; that the averment pleaded is not contradictory, but explanatory of the condition; that the bond was void ab initio, and never had any existence."

In the numerous cases decided since, both in England and this country, the weight of authority has probably carried the principle beyond the limit of the leading case, and permitted a plea, not alone explanatory, but expressly contradictory of the consideration in the bond, where the contract was of such illegality or immorality that its enforcement would be injurious to the public welfare. And a distinction has been taken between those contracts in which the consideration affects only the parties, and those in which it affects the public. In this state, it has been held, that a note or bond given in fraud of creditors, is valid as between the parties; and in Evans v. Dravo, 24 Pa. 62, it was held, upon full consideration, that a bond given a husband on a collusive transaction to defraud his wife could be enforced, and the obligor would not be permitted to show his own turpitude to defeat a recovery. But in that case, the court uses this language, by WOODWARD, J.: "I do not say the rule is applicable to contracts forbidden by statute, or which are contra bonos mores; they stand on their own ground, which it is now not necessary to examine." The ground on which they stand is stated by BLACK, J., in Jenkins v. Fowler, 24 Pa. 308, which was a contract between adjoining landowners who, for their mutual advantage, agreed to fence in a public road. "The contract being wholly void, one of the parties cannot sue the other for a breach of it." The substance of the decision is, that a contract between individuals, which is necessarily prejudicial to the convenience and welfare of the public, must not be enforced, no matter how flagrant and malicious the breach of it by one of the parties.

So, while the rule laid down in Evans v. Dravo, supra, Swan v. Scott, 11 S. & R. 155, and other cases, that a demand on an illegal transaction will be enforced, if the plaintiff can make out his case without disclosing the illegality, that rule

has not been invariably applied to contracts, where the illegal consideration is a violation of statute or an immorality detrimental to the public. In such cases, the courts may overlook the parties, and consider the question one of public policy. As is said in "Smith's Leading Cases," 8th ed., in note by Hare & Wallace, vol. 1, 752, where most of the cases are carefully cited : " The better opinion seems to be, that there is no universal rule, and that each case must be governed in some degree by its own circumstances. The maxim, nemo allegans turpitudinem suam audiendus, is inflexible, as between the parties, but may yield to considerations of public policy and the duty of preventing the consummation of a fraudulent and illegal purpose." Nor, is the rule universal in its application to cases where the consideration is violative of a statute, as will be noticed from the cases cited to the leading case.

And this brings us back to the reasoning of WILMOT, J., in the leading case, Collins v. Blantern, supra :—Is the contract grounded upon a vicious consideration, which strikes at the contract itself in such a manner as shows that, in truth, it never had a legal entity ? If the consideration for the payment of the $4,000 was, that plaintiff should obtain a divorce from her husband, the consideration was a violation of statute by both. The 2d section of the act of .1815 provides, that in her petition or libel she shall set out the cause for the divorce, and under oath or affirmation state that it is not made out of levity or collusion. If this was the consideration for the $4,000, it was in violation of statute and was so vicious that the contract never had a legal existence : Kilborn v. Field, 78 Pa. 194. That the plaintiff and defendant stipulate for a falsehood to the court and contract that one of them shall commit perjury to bolster up the falsehood, clearly renders the contract void ab initio, if based on such iniquity.

In passing upon the correctness of the court's ruling we must, however, consider how the case stood when this offer was made.

The plaintiff had offered in evidence a written contract, by which she agreed, by deeds, to relinquish her right of dower in a tract of land worth $150,000, also her right of dower in sixteen other tracts, and any right she had in all his personalty; also, that she would deliver up possession of the house wherein

she lived; that she would discontinue the suit to restrain the sale by his sister. For this, he was to pay to her $6,000. She then proved that all she was to do she had done; the consideration in one deed was $1,000, and in the other $5,000, making $6,000, for which she had receipted, but he had only paid her $2,000. All this was proven beyond dispute, and the further fact appeared, that after the agreement they had resumed marital relations, and had lived together for several years. She had rested her case. The defendant then offers evidence, not in denial of a single fact established by her, but to show a contemporaneous parol agreement between her attorneys and his, that the $4,000 note was not to be delivered until she had procured a divorce, this for the purpose of making void the written contract. That is, the offer is to prove, that with the knowledge of the clients, their eminent and reputable counsel, in utter disregard of their duty of fidelity to the court, and in plain violation of the law of the land, engaged in traffic in divorces, and for a consideration passing between the parties bargained for a collusive decree.

There were presented to the court for consideration, two rules, each founded on public policy: 1. A written contract cannot be contradicted, altered or added to by parol except for fraud, accident or mistake. The reason for this rule is very concisely given in Wodock v. Robinson, 148 Pa. 503: "If it were not for the rule no man would be able to protect himself by the most solemn forms and attestations against falsehood, misrepresentation and perjury." The other rule is the one already noticed: 2. If an unlawful consideration for a contract be detrimental to public morals, the courts may permit a party to such contract to set up his own turpitude as a defense to a breach of it.

It must be kept in mind, the suit was not on a bond, bill, note or mortgage, expressing a nominal or money consideration, and which was met by an offer to prove the real consideration, as in nearly every reported case in which the question is considered; it was on a contract setting out in detail a full consideration on part of plaintiff for the money defendant was to pay; a consideration which he had received, and for years had been in the enjoyment of and which he did not pretend to deny. But he says to plaintiff, true, the contract, as represented, was

made; the purpose of that was not to obtain a divorce, but to free valuable lands of your claim upon them, that the title might be passed, and a favorable sale made; true, you paid the full consideration, and have not received what you were to get; this contract was a good one for me; it was fair, with no taint of illegality; but there was another, a verbal contract, not in writing, which is illegal, made by our attorneys, by which you were to get a divorce; that avoids the legal contract, and you cannot recover. This was the attitude in which defendant stood, when the offers of testimony were made. Clearly, under the whole testimony, that of plaintiff, which was heard, and that of defendant, which was offered, the integrity of the established written contract could not be affected by what, if true, was a collateral undertaking to do an unlawful act. The written contract did not, as in Collins v. Blantern, rest on a vicious consideration, which struck at the contract itself, so that it never had a legal entity. It rested on a perfectly good consideration, wholly independent of the merely collateral promise. No verdict against it, on such evidence, ought to have been or could have been sustained.

It must be remembered, when this offer was made, the judge was sitting as a chancellor to administer equity; on the law, defendant had not the shadow of defense; he now becomes the actor asking that in equity his written contract, the fruits of which he had in his pocket, be wiped out of existence; why? Because, according to his own story, he and plaintiff had participated in a crime; therefore, he prays the chancellor to reach out his hand, and save him from payment for the good bargain he has made with his brother's wife. Of course, his conduct meets the indignation of the chancellor; he has suffered no wrong, only wants to perpetrate one, and therefore cannot be aided on the ground on which equity affords relief to other suitors. But the question for the chancellor, is not what is his wickedness, but whether hearkening to his appeal will tend to encourage or deter other evil disposed persons from making illegal contracts. The answer to that question determines the public policy. We think, in view of the special facts of this case, to have listened to such a defense, instead of promoting the good of the public, would have tended to promote trickery and perjury, to evade payment of debts. While, if plaintiff had

offered, to sustain her claim, merely a bond, bill or note, and defendant had offered to prove the consideration was unlawful, the evidence would have been admissible, yet in view of the facts here the court properly rejected the testimony.

The averment, that while there was no fraud in the making of the parol agreement the plaintiff's use of the written agreement, before a decree of divorce, is a fraud upon him, is without foundation. Assume, he entered into such agreement, he knew no such decree could be legally entered, because of that very agreement; and, further, he knew that by resumption of the marital relation, after the libel for divorce had been filed, the wife condoned her husband's offenses prior thereto, and the cause for divorce at the date of the agreement ceased to exist, by reason of the condonation. This, according to his own showing, puts him in the attitude of attempting to defraud her out of the written consideration passing to her, after he has received every penny he was to get.

Without infringing on any principle in any of the decided cases, we are entirely clear in our judgment, that no policy of the law, or regard for the public good, requires us to aid defendant in the perpetration of such a wrong upon his brother's wife.

As to the note not being in plaintiff's possession at the time of suit brought, such physical possession of it was not necessary to sustain her action. If, as she clearly proved, she had done all she was required to do under the written agreement, she had a right to demand and have possession of the note; if it had not been produced at the trial, she could have recovered on the agreement without it. The written stipulation was, that she was to be paid $4,000 on November 1, 1885, if she signed the deeds, and performed the other conditions of the written agreement.

This payment was to be evidenced by a note payable at that date. If the note had never been delivered to her attorneys, her right to recover would have been clear; if delivered, and not handed to her, the agreement still evidenced her right to the money.

All the assignments of error are overruled, and the judgment is affirmed.