Thommen v. Thommen's, Inc., Appellant.

Argued October 9, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Joseph L. McAleer,* for appellant.—The contract was void as against public policy. Speck v. Dausman,

7 Mo. A. 165; Kuhn v. Buhl, 251 Pa. 348; Miller v. Miller, 284 Pa. 414; First National Bank v. Baer, 277 Pa. 184; Pittsburgh v. Goshorn, 230 Pa. 212.

*Marshall A. Coyne,* and with him *Charles S. Wagoner,* for appellee.—The contract was not against public policy. Rodenbaugh v. Rodenbaugh, 17 Pa. Superior Ct. 619.

The agreement was not ultra vires. Mutual Trust Company v. Stern, 235 Pa. 202; Lemmon v. East Palestine Lumber Co. 260 Pa. 28; Doylestown & Danborough Turnpike Co. v. Philadelphia and Easton Railway Co., 49 Pa. Superior Ct. 381.

OPINION BY LINN, J., December 13, 1928:

The plaintiff, a widow, sued defendant corporation for sums due weekly from September 3, 1926 to the date of suit on defendant's written contract dated June 11, 1921. She and her husband had been engaged in the business of catering and confectionery on 23rd Street, Philadelphia, from 1892 until 1912 when, as she testified, he deserted her and began the same kind of business on his own account at another location, plaintiff continuing at the old stand in her own name. Beginning in 1918, his business having then apparently been incorporated into what is now the defendant, the corporation, pursuant to oral arrangement "paid her $50 a week for getting out of business" and sending "all orders from customers [she] had before" to the corporation. She testified that she insisted on a written agreement and that her insistence resulted in the agreement in suit; that as part of the consideration, the corporation took over her books, "business and fixtures and the good will, whatever you could take." The agreement provided that she should cease doing a catering and confectionery business under the name Thommen in Philadelphia and should solicit business for defendant during the

life of the agreement; that in return defendant would pay her $5,000 a year in weekly payments beginning November 1, 1921, so long as she remained unmarried, but only $2,500 per year "in the event of her remarriage, which it is agreed by both parties would limit her ability to render the service herein called for." She testified that she performed her part of the contract, and there is no evidence to the contrary; defendant performed until September 3, 1926. Plaintiff and her husband were divorced in December, 1921; he died in October, 1922.

The principal defense averred in the affidavit was that the contract "was a subterfuge intending to clothe with apparent legality and value the adjustment of certain personal domestic affairs of the said Bertha Thommen [plaintiff] and said John Thommen." That issue was tried and the jury found for the plaintiff in the sum claimed.

Three contentions are presented here: (1) that the contract was ultra vires; (2) that, when read with another written contract made at the same time by plaintiff, her husband and Aldine Trust Company, it is void on the ground that the consideration for defendant's promise to make the payments in dispute, though not expressed, was that plaintiff should obtain a divorce from her husband; (3) that the court erred in excluding evidence tending to show that defense.

1. The agreement was authorized by the board of directors June 15, 1921; on the evidence the jury could find that the agreement was for corporate purposes, it was not ultra vires to agree to pay plaintiff during her lifetime for the transfer of her business, the elimination of her competition, and her employment as solicitor of business thereafter.

2. The point most stressed concerns the relation of the divorce proceeding to the undertaking of the corporation now sought to be enforced. Plaintiff's agreement on which the suit is based makes no reference to

her marriage except, for the reason stated, to reduce by one-half the weekly sums payable by defendant in case of marriage. An assignment of error complains that she was asked in cross-examination whether she had an agreement with her husband dated the same day as the contract in suit "in reference to what is called the payment of alimony," but was not permitted to answer. The assignment is dismissed, because, later in the case, the contract was put in evidence. The parties to it were the plaintiff, her husband, and the Aldine Trust Company. It recited that she had brought suit for divorce in Court of Common Pleas No. 3 of Philadelphia County, as of June T., 1921, No. 938, and that it was desired to provide for alimony without requiring her to take steps for the purpose of formally obtaining an order for alimony in the suit, (see Miller v. Miller quoted below); her husband agreed to pay to her $500 in cash on the execution of the agreement; that there would be deposited in escrow with the Trust Company certain papers (deeds, life insurance policy, etc.) and money to be delivered as provided in the agreement. It was agreed that upon the entry of a decree in divorce in the proceeding mentioned, the Trust Company would deliver to her certain of the documents deposited and the money, and would deliver certain other documents to the husband. It also provided that in case of Thommen's death before the entry of a decree of divorce, certain of the documents should be delivered to her without prejudice to her right to claim an additional interest in his estate according to law, and that if she died before a decree in divorce was granted, a deed deposited with the agreement should be delivered to her representatives and the money and remaining documents should be delivered to the husband. There was no provision that the husband would not defend the divorce case, or indicating collusion in other respects; see Com. ex rel. v. Glennon, 92 Pa. Superior

Ct. 94, 100. It appears that a divorce was granted and that on December 27, 1921, the Trust Company distributed the papers and money in accordance with the agreement, among them being the contract on which plaintiff bases this suit.

3. Another assignment complains that defendant was not permitted to show "that the present counsel of [plaintiff] in this case, and his associates engaged in the practice of law in the same offices, were or some of them were during the lifetime of John Thommen and are at the present time counsel in" various capacities touching the affairs of the defendant and the estate of John Thommen, deceased, as will appear in the reporter's statement of the case quoting the excluded offer of proof in full. If, as appears at the end of the offer, it was made for the purpose of showing that the payments by the corporation to plaintiff on her contract with it "after the death of John Thommen were not a ratification, and that this plaintiff is estopped to set up this course of dealing as binding upon this defendant," the offer is clearly irrelevant because, as has been stated, there was proper corporate action authorizing the execution and delivery of the contract, and the jury has found that the agreement to buy her business, eliminate competition and employ her was for the benefit of the corporation and was reasonable in its provisions. On the other hand, if any part of the offer was for a purpose not stated at the end of it, but was intended to afford a basis for the inference that counsel for John Thommen was acting in two inconsistent capacities, representing him and her at the same time, the offer was properly refused as too general and indefinite for the purpose. It may also be said that as the case was tried more than seven years after the agreement was made, the mere fact—if it be a fact—that counsel who represented John Thommen when the agreement was drawn now represented her in the suit to enforce the

obligation against the corporation, would, without more, have no obvious relevance to the defense of collusion in the divorce case; certainly no possible relevance was pointed out.

The third assignment was to the sustaining of objection to an offer of "the proceedings in divorce . . . . . .to show the date of the filing of the libel and the date of the final decree, to wit: December 19, 1921, and for the further purpose of showing that the case wa's pending in June, 1921 at the time this agreement upon which suit was brought was made." Within the limits of the purpose so stated defendant was not injured by the ruling: The agreement of June 11, 1921, recited that the divorce proceeding had been commenced and that it was proposed to provide alimony without requiring a petition for that purpose. If the exact date when the proceeding was begun was deemed important as related to the date of the agreement— June 11—it could have been inferred with sufficient accuracy from the fact that the suit was begun in June T., 1921, a term which, of course, began on the first Monday of June (June 5, as the calendar shows), that is, six days before the date of the agreement.

But what is here of real significance in the record, is that defendant had the benefit of the submission of the case to the jury on lines somewhat broader perhaps than the evidence justified, but certainly, a's we understand appellant's argument, on the lines on which it would have desired the evidence submitted if all that was excluded had been received. The court charged that defendant contended that "this contract was not a bona fide transaction to get rid of Mrs. Thommen's business on 23rd Street, but a scheme of John Thommen to use the assets of this company to settle with his wife in her pending divorce suit . . . . . . It is claimed by defendant that the two contracts were connected in a scheme to facilitate the granting of the divorce, and that the defendant derived no benefit

from the contract requiring the payments to her. If you conclude this was a legitimate contract made by the company your verdict should be for the plaintiff for the amount of the claim; but if you conclude that it was a mere scheme in aid of the divorce case and that the company received no benefit from the contract, your verdict should be for the defendant." The applicable precedents cited by the appellant are against it. In Miller v. Miller, 284 Pa. 414, at 418 it is said: "It is conceded by both parties here that if the contract had for its sole purpose the securing of a divorce, the agreement would be held contrary to public policy, and therefore inoperative (Mathiot's Est., 243 Pa. 375; Kilborn v. Field, 78 Pa. 194), though this cannot be shown by parol as a defense in an action to enforce its terms, when based on an apparently legal contract, where the purpose is to set up a collateral and collusive understanding in contradiction of the legal consideration expressed: Irvin v. Irvin, 169 Pa. 529; Rodenbaugh v. Rodenbaugh, 17 Pa. Superior Ct. 619. Likewise an arrangement tending to facilitate the granting of a decree is invalid, and where collusion appears, as shown by a promise not to defend, nor to furnish evidence for the libellant, it cannot be sustained. However, if the facts negative this idea, a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties (13 C. J. 464; 19 C. J. 92; King v. Mollohan, 60 Pac. R. 731, 61 Pac. R. 685 (Kan.); or the causes upon which the application is to be based are by stipulation limited: Irvin v. Irvin, supra ......." Even if true that "a divorce was in the minds of the parties" it cannot be said from an inspection of the two agreements in evidence, that divorce was a consideration or that there was collusion in obtaining it, and as we understand the quotation from Miller v. Miller, neither element of illegality could be "shown by parole as a defense in an action to inforce" the contract, which

on its face is apparently legal and based on adequate consideration; defendant could not prove a parole "collateral and collusive understanding in contradiction of the legal consideration expressed" in the contract in suit. All the assignments of error are overruled.

Judgment affirmed.

KELLER, J., dissents.