# Reynolds *versus* Richards.

1. The mere fact of evidence being *in writing* does not entitle the court to interpret its meaning conclusively. Where it is unaffected by parol evidence, it is within the province of the court to interpret it; but where the question is not on the interpretation of the writing, but on its effect as evidence of a collateral fact, it is to be submitted to the jury.

2. Where an article of agreement was made for the sale of land, part of which to be paid in cash and part in work, and a note was given for the lat-

S

[Reynolds *v.* Richards.]

ter amount, on the payment of which the title to be made; an order by the vendor to execute the deed, is not so conclusive as to the payment of the note, as to raise a legal presumption of its payment; it is presumptive evidence of payment, which is to be submitted to the jury.

3. A note which, on its face, points to the terms of another instrument, by which it was payable in work, is not a *negotiable note*, and a suit upon it must be in the name of the payee. If it has been trasferred, and the name of the transferree is endorsed on it, in blank, the note being sued in the name of the payee, a recovery by him and payment by the drawer, will protect the latter against any further demand on the note.

ERROR to the Common Pleas of *Clarion county*.

This was an action by Reynolds, for use, (without stating the person,) against Richards, to recover the amount of a note, as follows:

Twelve months after date, I promise to pay to the order of Alexander Reynolds, fifty dollars, with interest from the date hereof, and without stay of execution, after due, for consideration of the carpenter work in our article of agreement, for in-lot, No. 126, Nov. 3d, 1841.

Signed,          ABRAHAM RICHARDS.

Test:   A. JAMISON.

The *narr.* contained a special count on a promissory note, and common counts. Plea, payment, &c. Reynolds had an article of agreement with the commissioners of Clarion county, for two in-lots. He agreed to sell to Richards one of the lots, and Richards agreed to pay him $100, viz., $50 in hand, and $50 in carpenter work, at cash prices, to be paid when said Reynolds demands it. Said Reynolds is to make the title as soon as the work is done.

Reynolds, on the 1st day of June, 1842, transferred the said note, by endorsement on it, without recourse, to Alexander Jamison; and it also appeared that Alexander Jamison endorsed the note in blank.

For further facts, see charge of BUFFINGTON, J. :—In the present case, the plaintiff seeks to recover on a note dated on the 3d Nov., 1841, calling for $50 in carpenter work. Richards bought lot No. 126 from plaintiff, and agreed to pay him $100; $50 of which was to be paid in hand, and the balance, by the article, was to be paid in carpenter work, at cash prices, when demanded, and the title to be made as soon as the work was done. A receipt is endorsed on the article for the money, and also for the note now in suit, on the payment of which, plaintiff acknowledges he is to make over the commissioners' article. On the 11th of June, 1845, plaintiff endorses on the article of agreement, an unconditional request or order to the commissioners to make the deed to Richards. The state of facts arising from the written papers, raises a legal presumption that the amount of the note had been paid, according to its terms, at the time the order was given. But to

[Reynolds *v.* Richards.]

rebut this presumption, the plaintiff has read in evidence the assignment of the note to Alex. Jamison, dated the 1st June, 1842; and it further appears, that the said Jamison endorsed the note in blank; when, and to whom, does not appear. The present suit is brought in the name of Reynolds alone, without being marked to the use of any one. We, therefore, treat the endorsement of Jamison as passing the interest out of him; and that, together with the order to the commissioners, and the fact that the suit is brought in the name of Reynolds alone, as passing the interest back to him. The whole case being in writing, it becomes the duty of the court to decide it; and we have come to the conclusion that the whole of the written papers raises a legal presumption *that the note was paid;* and that the verdict should be for the defendant.

To which opinion of the court the plaintiff's counsel excepted.

Verdict for defendant.

It was assigned for error:

1st. That the court erred in saying to the jury that the suit was brought in the name of Reynolds alone, when the record shows it was brought in the name of *Alexander Reynolds,* for use: Armstrong *v.* The City of Lancaster, 5 *Watts* 68.

2d. The court erred in treating the endorsement of Jamison, together with the order to the commissioners, and the fact that the suit was brought in the name of Reynolds alone, as passing the interest in the note back to Reynolds.

3d. The court erred in attaching any importance to the blank endorsement of Alexander Jamison, as the note was not negotiable, and the interest of Jamison would not be passed by a blank endorsement; and also, there was no evidence that Reynolds ever had the possession of the note since he assigned it to Alexander Jamison, on the 1st day of June, 1842.

4th. The court erred in instructing the jury that, from the whole of the written papers given in evidence, there was a legal presumption that the note was paid.

The case was argued by *Corbit,* for plaintiff in error; and by *Sutton,* for defendant.

The opinion of the court was delivered by

GIBSON, C. J.—The question of payment ought not to have been determined by the court as a question of law. In consideration of $100 to be paid, the half in hand and the half in carpenter work, Reynolds agreed to sell to Richards his equitable title to a lot of ground bought from county commissioners; and to procure the title to be made to him when the work should be done. The hand-money was paid, and Richards subsequently gave, for the residue, the promissory note on which action was brought. Years

[Reynolds *v.* Richards.]

afterwards, Reynolds endorsed on the article a direction to convey
the title; which was done.  Now, though this direction and the
deed which followed it were strong evidence of payment, it was
open to contradiction, and ought to have been submitted to the
jury as such.    It followed not that because the evidence was
written, its effect was to be determined by the court.    To interpret
the meaning of a writing unaffected by parol evidence, is doubtless
the province of the judge; but the question below was *not* on the
interpretation of the written direction, but on its effect as evidence
of a collateral fact.    It was certainly presumptive evidence of pay-
ment; but the conclusion from it was not to be drawn by the
court.

Presumptions strictly legal shut out further investigation, and
exclude the functions of a jury.    Presumptions strictly of fact,
having no power to produce an assumed belief, or any belief beyond
the natural and unassisted effect of the circumstances, exclude the
function of the court.    The intermediate class, called *presumptions*
*of law and fact,* might more properly be called legal presumptions
of fact, because the law presumes the fact in giving them an arti-
ficial effect, beyond the actual weight of the evidence; but though
the law dictates the conclusion, it must be drawn by the jury
under the direction of the court, and not by the court alone: *Stark.*
*Ev. pl.* 4, page 1243.    They give to particular circumstances the
force of *prima facie* evidence, which stands for proof till it is re-
butted.    Thus it it is said by Mr. *Starkie*, that a jury is to be
required, or at least *advised* to infer a grant of an incorporeal
hereditament from an unanswered adverse possession of twenty
years.    In a parallel case I would direct them, that as the law
infers the fact, they are bound to infer it also, even at the expense
of their actual belief; but I would at the same time instruct them
that it is their province to pronounce it, not mine.

Of this class is every artificial but inconclusive presumption.
The instance most analogous to the present, is the case of a receipt
for rent, which is *prima facie* evidence of payment of previous
arrears.    In our case, the law raised a presumption that if the
purchase-money had not been paid pursuant to the terms of the
bargain, the direction to make the conveyance would not have
been given; yet, though the result would *doubtless* have been the
same, the conclusion did not lie entirely with the court.    It could
no more have been drawn from the circumstances, if found in a
special verdict, than a legal conclusion of conversion in trover
could be drawn from a finding of demand and refusal: in the one
case and the other, the circumstances are but evidence of the fact,
and not the fact itself.

Nor was the assignment of the note a bar to the action.    It was
not negotiable, for there was enough on the face of it to point to
the terms of the article by which it was payable in carpenter work,

[Reynolds *v.* Richards.]

and the suit could consequently be maintained only in the name and on the legal title of the payee, who, in contemplation of law, was still the holder. It was immaterial to the defendant whether he was actually so or not, as payment on the foot of an execution would be a valid discharge. He would have no concern with the ownership of the money after it had left his hand; for he could be no further called upon. Even had the note been negotiable, it would be enough that the plaintiff had obtained it again by the blank endorsement of the person to whom he had passed it. The only ground of defence is the presumption of payment.

Judgment reversed and *venire de novo* awarded.