## M'Kean et al. *versus* Wagenblast.*

1. Plaintiff, through defendants, shipped a cargo of boots, &c., to Buenos Ayres and Montevideo, upon which defendants advanced him $1000. Subsequently, plaintiff shipped other cargoes to the same consignees. If the wool in dispute, was the proceeds exclusively of the first cargo, the defendants had a right to retain it until their advances were paid. If purchased exclusively with the proceeds of the subsequent shipments, the defendants had no right to retain it.

* This case was in this court in 1853, for report of which, see *ante*, 393.

[M'Kean et al. *v.* Wagenblast.]

2. When goods, specifically pledged for a debt, become confused with other goods of the debtor, the creditors' lien is lost, if the confusion is created by the creditor himself, and is extended to the whole mass, when the intermixture is made by the owner.

3. When the meaning of a written document is disputed, its interpretation is a matter of law for the court, but not so when it is offered as evidence of a fact, or when it is to be considered in connexion with the situation of the parties, or in reference to other facts proved by parol.

4. To entitle a consignee of goods to commissions, he must have a contract with the owner, either express or implied.

ERROR to the District court of *Philadelphia.*

Trover for a quantity of wool.

This is the third time this case has been in the Supreme Court. The second decision of this court in the case, is reported *ante,* p. 393, to which, and to the opinion in this case, a reference is made for the facts.

*Gerhard,* for plaintiffs in error.

*Markland,* for defendant in error.

The opinion of the court was delivered by

BLACK, J.—The mistakes committed by the District Court, in the trial of this case, are twenty-four, according to the plaintiffs in error's mode of enumerating them. But some of the specifications are too argumentative; some of the errors, if errors they be, are waived, by being assigned contrary to the rule; some are not based on any exception taken at the trial; some are necessary consequences of the others, and many are mere repetitions. It would be unprofitable to take up these exceptions, and decide them one by one. But we will review in our own order, so much of the case as we consider properly before us.

The action is trover, for twenty-five bales of wool, shipped here from Buenos Ayres, to M'Kean, Borie & Co., the defendants below, but claimed by Wagenblast, the plaintiff. It appeared, that the plaintiff received from the defendants, $1000, as an advance upon an invoice of trunks and shoes, which he engaged to ship to Moss & Purdon, at Buenos Ayres or Montevideo, the proceeds to be sent to the defendants. The trunks and shoes were shipped by the *Brutus,* according to contract, and arrived at Buenos Ayres. The agents there, were advised by Wagenblast of the shipment, and directed to render account of proceeds to M'Kean, Borie & Co. Before, and after this shipment by the *Brutus,* the plaintiff sent out other goods of the same kind, to the same consignees at Buenos Ayres and Montevideo, by the *Delight,* the *La Plata,* and the *Spartan.* It was the manifest duty of the agents, at Buenos Ayres and Montevideo, to keep the cargoes of the last named vessels sepa-

rate from that of the *Brutus*, returning the proceeds of the latter to the defendants, and of the former, to the plaintiff himself.    There is no distinct positive evidence, to show whether this duty was performed or not.    The wool now in controversy, was sent here consigned to the defendants, and was purchased with funds, made out of some, or all of the shipments, of the plaintiff's shoes and trunks.

If the facts are once ascertained, the principles of law which rule the cause, may be very easily and briefly stated.

If the wool in dispute, was the proceeds, exclusively, of the goods sent out by the *Brutus*, the defendants had a right to retain it until their advances were paid, for those goods were specifically pledged and appropriated to that purpose.

If no part of the shipment by the *Brutus* was invested in the wool, but all of it was purchased with the funds made out of the other cargoes, it is equally clear, that the defendants had no claim whatever, because they had a specific lien for their advances on one cargo, and they could not shift it to other goods of the owner without his consent.

But these several shipments of trunks and shoes, and their proceeds, may have been wrongfully intermixed and confused with one another.    When goods specifically pledged for a debt, become confused with other goods of the debtor, the creditor's lien in some cases is thereby extended to the whole mass, and in other cases it is lost altogether.    It is lost when the confusion is made, or caused by the creditor himself, and it is extended when the intermixture is made by the owner.    The mixture of goods so situated is illegal and injurious.    He who is guilty of it, can have no advantage from his own wrong, and he who is innocent, shall not be compelled to suffer for the wrong of his adversary.

*Qui facit per alium, facit per se.*    If either party without the knowledge and consent of the other, ordered or directed the factors to intermix the goods or their proceeds, the party giving such order is responsible for the confusion, in the same manner as if he had done it with his own hands.

But Moss & Purdon may have confused these several shipments without any order from either party; supposing this to be the fact, then, the question whether the plaintiff's lien is lost entirely, or whether it extends to all the shipments, with which that by the *Brutus* has been mixed, will depend on whose agents Moss & Purdon were.    If the cargo of the *Brutus* was in their hands, as agents of the defendants, and if instead of keeping it by itself, and sending its proceeds to their proper principals, they mixed it with other goods of the plaintiff, which they happened to have then, the wrong committed by the defendants' agent is committed by themselves; they can have no advantage

[M'Kean et al. *v.* Wagenblast.]

of it, and their lien for advances is lost totally. On the other hand, if this wool is the proceeds of the cargo sent out by the *Brutus*, mixed with other goods by Moss & Purdon, while acting as the plaintiff's agents, with reference to that cargo, then the whole of the wool is subject to the defendants' lien.

All these rules were comprehended in the charge. The learned judge went still further in favor of the defendants, and instructed the jury, that if Moss & Purdon were agents of both parties, their act of intermixing the goods would extend the lien to all the proceeds, and give the defendants a right to retain the wool until the advances were paid.

The verdict was in favor of the plaintiff. Such being the charge, and such the verdict, it is conclusively settled as matter of fact, either that the wool was exclusively purchased with the proceeds of the shipments sent by the *Delight*, *La Plata* and *Spartan*, or if any part of the lot sent by the *Brutus* was mixed with the others, the intermixture was caused by the defendants. It is a fixed truth, which admits of no contradiction here, that if any part of the goods pledged to the defendants, were confused with other goods, on which they had no claim, it was done by persons who were not the agents of both parties, nor the agents of the plaintiff; and it was not done by his directions, but by the agents of the defendants themselves, or under their own orders.

It is argued, that the court erred in not deciding as matter of law, that the letters given in evidence did conclusively show, that the confusion of these several shipments of shoes and trunks, or their proceeds, was the act of the plaintiff. We are not of that opinion. In the first place, the court was not asked, in any regular way, to give a construction to the letters. Nineteen points on the law and the facts of the case, referring to all the evidence, written and parol, were submitted to the court; and then, in the twentieth, a desire was expressed, that the judge would give a binding direction on all of them, except the eighteenth. Now if these points were already answered separately, and answered correctly, that was enough; if any one of them was answered erroneously, let that answer be specified, and no more is needed. But a great proportion of the propositions, which the judge was thus asked to settle decisively, related to parts of the case on which there was no written evidence; not only matters of mere fact, but were supported and opposed entirely by parol. For instance, the two first concerned the plaintiff's demand of the wool, and the refusal of the defendants to give it up; a point on which there was no documentary evidence whatever. But if the prayer had been confined to the letters themselves, it would not have been entitled to an affirmative or favorable answer. When the meaning of a written document

is disputed, its interpretation is a matter of law for the court. But not so where it is offered as evidence of a fact, (2 Harris, 208;) or where it is to be considered in connection with the situation of the parties, (14 S. & R. 330;) or with reference to other facts proved by parol, (12 Id. 136.) The case of *Turner* v. *Gates*, 6 Howard, 14, cited by the plaintiffs in error, for the contrary doctrine, does not sustain it, for it was there very distinctly laid down, that, not only the effect, but even the meaning of letters, must be sometimes left to the jury, where there are extraneous facts, or where the correspondence shows only a part of the dealing. In the present case, the meaning of the letters was not the question; no interpretation of them was called for. The fact that they were written and sent, was proved, in order that another fact might be inferred. Whether the inference should or should not be drawn, was for the jury to say, upon consideration, not of the correspondence only, but of all the evidence in the cause.

The court was asked to say that the defendants had a lien on the wool, for their advances, as general factors. But the judge rightly declined to do so, because there was no evidence of any such relation, as that of principal and factor, between the parties; and because the goods do not appear to have come into the hands of the defendants, by the consent, express or implied, of the plaintiff. The defendants either had a right to retain the wool under the special lien created by the contract, or else they had no right to have it in their possession at all.

The jury were instructed that, in estimating the damages, they should recoup the necessary expenses paid by the defendants, but not commissions. We know of no rule of law, on which the correctness of this can be denied. To entitle a consignee of goods to commissions, he must have a contract with the owner, either express or implied. But it cannot be said that there is a contract between the owner of goods, and a person who has them without his consent; who keeps them when he demands their delivery, and sells them in the face of his protest.

On the question, whether the refusal to deliver the wool, with the accompanying circumstances, amounted to a conversion of it by the defendants, we have nothing to say in addition to what was said by Mr. Justice Lewis, when the case was here before. We think now, as we thought then, that an offer by the plaintiff's agent, to pay what was due, and a refusal by the defendant, in general terms, without any statement of his demand, or giving any reason for his refusal, ought to be regarded as an assertion of his absolute right of property in the goods. To decree otherwise, would be directly contrary to what every man's common sense makes him perfectly sure was the real nature of the transaction. We know very well, and so does everybody

else who has looked at the evidence, that the defendants detained the wool, not for expenses, but for advances. When M'Kean declared the business to be in the hands of their lawyer, he meant that the validity of their lien for advances was to be tried; not that he had employed counsel to establish what nobody denied, his right to be re-imbursed for expenses.

We see nothing on this record to justify a doubt that the cause has been legally tried and justly determined.

Judgment affirmed.