## Continental Guaranty Corporation v. Jacobs.

*Evidence—Written instrument as evidence of collateral fact—Question for jury—Automobile—Bailment—Conditional sale—Practice—Rule for judgment n. o. v. converted into rule for new trial.*

1. As evidence of a collateral fact, the weight and effect of a written instrument are for the jury.

2. A, by a written instrument, calling itself a "lease," and the parties to it "lessor" and "lesee," transferred a second-hand automobile to B, who paid part cash and gave instalment notes for the balance. A sold its interest in the lease and the notes to C, the plaintiff, and B sold the automobile to D, the defendant. Subsequently B defaulted in payment and C replevied the automobile in the hands of the defendant, contending that the transaction was a bailment. In the vendor paper filed by A, in compliance with the Act of June 30, 1919, P. L. 702, A declared that the automobile was "sold, transferred and conveyed" to B, while the vendee paper called it a "purchase." There was no evidence that the defendant, before acquiring the automobile, had any knowledge of the papers filed when the car passed from A to B. The court directed a verdict for the defendant. On a rule for judgment *non obstante veredicto: Held,* that the question whether the transaction was a bailment or a conditional sale should have been submitted to the jury. The rule for judgment *n. o. v.* was converted into a rule for a new trial, and the rule for a new trial made absolute.

Rule for new trial. C. P. Berks Co., Oct. T., 1920, No. 36.

*E. H. Deysher,* for plaintiff and rule; *Rothermel & Mauger,* for defendant.

ENDLICH, P. J., April 10, 1922.—By a written instrument dated Dec. 20, 1919, and calling itself a "lease" and the parties to it "lessor" and "lessee," respectively, the Overland-Harper Company transferred to one Kegerise a second-hand automobile; he traded it to one Levan in part payment of another machine, and Levan sold it to defendant. Kegerise paid $232.51 in cash, and gave his note for $465.02, payable in ten monthly instalments, eight of $46.50 and two of $46.51 each, the whole amount being $697.53, the price of the automobile. On the same day, Dec. 20, 1919, the Overland-Harper Company sold and assigned its interest in the lease and the property covered thereby to the Continental Guaranty Corporation, plaintiff, which received from the Overland-Harper Company the lease and the note for $465.02, and on Dec. 24, 1919, sent its check to the Overland-Harper Company for $400.71, the proceeds of the note, less carrying charges, etc. Kegerise made three payments of $46.50 each, on Jan. 21, 1920, Feb. 24, 1920, and March 30, 1920, respectively, and on April 21, 1920, sent the plaintiff a check for $306.52 in payment of the balance, which check, however, was not paid, but protested. Thereupon the Continental Guaranty Corporation, planting itself on a provision of the lease and acting as the owner of the automobile, caused a writ of replevin to be issued against the defendant for the recovery of the machine. He gave bond and retained it. The value of the machine agreed on by the parties at the trial was $450. The contention of the plaintiff is that the transaction between the Overland-Harper Company and Kegerise was a bailment, and that he never acquired, and, of course, could not convey, any interest greater than as bailee; whilst that of the defendant is that the trans-

2 D. & C.

Continental Guaranty Corporation v. Jacobs.

action was a conditional sale. There seems to be no difference of opinion between counsel for plaintiff and counsel for defendant that the case turns upon which of these contentions is to be accepted by the court. At the close of the trial, the court directed a verdict for the defendant, and subsequently entered this rule for judgment n. o. v.

1. Whilst the law pays little heed to the label the parties put upon their transaction, Brunswick, etc., Co. v. Hoover, 95 Pa. 508, 513, it is a well recognized principle that the construction the parties themselves have placed upon their contract is the one which ordinarily the court will adopt: Gas Co. v. Wire Co., 155 Pa. 22, 25; Kaul v. Weed, 203 Pa. 586, 593; Howell's Estate, 231 Pa. 213, 218. There is, indeed, no doubt about the principle; the trouble is about its application in this case. The witnesses mainly relied upon by plaintiff make it a point, in parts of their testimony, to emphasize their conception of the transaction as a leasing, but in other parts of their testimony they speak of the transaction as a sale or purchase of the automobile. Under these circumstances, there can be no well-founded claim on either side of a decisive or even persuasive indication that the parties joined in understanding the transaction to be either the one thing or the other; at least no such potential indication as would justify the court in pronouncing it the one or the other as a matter of law. Perhaps the strongest suggestion of the understanding of the parties as to the nature of their transaction is to be found in the vendor and vendee papers made out and sworn to in compliance with the Act of June 30, 1919, P. L. 702, where the act applies. In the vendor paper the Overland-Harper Company declared that the automobile was "sold, transferred and conveyed" to Kegerise. The vendee paper called it a "purchase." If it could be gathered from the statute that the maker of a vendor paper and those tracing their acquisition of a second-hand vehicle to him would be bound by the recitals of fact, even though not seen, the effect might be very different. But no such direction has been pointed out; and there is no evidence that the defendant, before acquiring the automobile, saw the papers filed when the car passed from the hands of the Overland-Harper Company, and, of course, a party cannot have the benefit of an unproven fact the same as though it had been proved: Pease v. Cole, 53 Conn. 53; Railroad Co. v. Navigation Co., 167 Pa. 576, 581. Nor is the recital of one state of facts in a paper prohibitive of proof of a different state of facts. However suspicious such a proceeding may be, under the teachings of Callan v. Lukens, 89 Pa. 134, and Fulton v. Lancaster County, 162 Pa. 294, 303, the evidence is entitled to be submitted to the jury, although inconsistent with what the party may have sworn to before, it being for the jury to settle the doubt arising from such confusion or contrariety: see Kohler v. Railroad Co., 135 Pa. 346, 357. So it must be in this case. And the fact that the vendor and vendee papers make their declaration in writing cannot change this conclusion. As evidence of a collateral fact, the weight and effect of a written instrument are for the jury to be freely judged of by it: see Reynolds v. Richards, 14 Pa. 205; Miller v. Fichthorn, 31 Pa. 252; Bank v. Hartman, 147 Pa. 558; McKean v. Wagenblast, 2 Grant, 462.

2. The application of the principle that where one of two innocent parties must suffer through the wrong of the third, the loss must fall on the party who made the wrong possible, is not clear enough in this case to be made the basis for a final decision of it.

3. In the light of what has been said, it seems reasonably manifest that it was a mistake to direct a verdict. The decision ought to have been left to the jury with proper instructions as to the subject-matter of their inquiry. But

it is equally true that for the same reasons, *mutatis mutandis*, it would be just as much of a mistake to enter judgment *non obstante veredicto*. In this situation, the prudent course will be to adopt the expedient employed by Judge Woodward in Gring v. Burkholder, 2 Woodw. 82, viz., to convert the rule for judgment *n. o. v.* into a rule for a new trial and make that absolute. The case will then be retried and the question whether the transaction in issue was a sale or a bailment will be determined by the verdict of the jury, under all the evidence pertinent to it.

And now, April 10, 1922, it is ordered that a rule to show cause why a new trial should not be granted be entered as of Sept. 21, 1921, *nunc pro tunc*, that the rule for judgment *n. o. v.* be discharged, and that the rule for a new trial be made absolute.

From Wellington M. Bertolet, Reading, Pa.