## Miller, Appellant, *v.* Miller.

*Husband and wife—Contract for support—Alimony—Property rights — Divorce — Collusion — Writing as evidence of collateral fact.*

1. Bona fide agreements relating to alimony or the adjustment of property rights between husband and wife, though in contemplation of a divorce, will be upheld if not directly conducive to the procurement of a divorce.

2. Parol evidence is admissible to define the subject-matter of such contract, so as to give the terms used their intended effect, and to establish that the arrangement entered into was legally permissible.

3. Where an application for a divorce is under advisement when a contract is made between a husband and wife by which the former contracts to pay his wife a certain sum for support, and the sum is less than a sum that would have likely been obtained in an action for support, or as alimony, and an existing separation is due to the misconduct of the husband, and it appears that the husband does not in any way bind himself not to present a defense in the divorce proceedings nor agree to furnish evidence to aid the libellant, the contract will be sustained as showing no evidence of collusion.

4. The mere fact that evidence offered is in writing, does not necessarily justify the court in conclusively determining its meaning. If unaffected by parol evidence, it is within the province of the court to interpret it, but where the question is not on the interpretation of the writing, but on its effect as evidence of a collateral fact, it is to be submitted to the jury.

Argued September 29, 1925. Appeal, No. 154, March T., 1925, by plaintiff, from order of C. P. Venango Co., Jan. T., 1924, No. 19, entering judgment for defendant

on affidavit of defense raising questions of law, in case of Mary F. P. Miller v. G. J. S. Miller.  Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Reversed.

Assumpsit for moneys alleged to be due on a written contract.*

The opinion of the Supreme Court states the facts.

Judgment for defendant on question of law raised by affidavit of defense.  Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*W. M. Parker,* with him *J. D. Trax,* for appellant.— When a written contract is attacked upon the ground that it is offensive to law or violative of public policy, the substance, not the form, of the agreement is looked at, and the court must not confine its attention to the mere words in which the agreement is expressed, but evidence aliunde the contract is admissible, either to prove the legality or the illegality of the contract: M'Kean v. Wagenblast, 2 Grant 462; Reynolds v. Richards, 14 Pa. 205; Kuhn v. Buhl, 251 Pa. 348.

*N. F. Osmer,* with him *A. R. Osmer,* for appellee.—A contract between husband and wife, pending proceedings in divorce, by which she would be paid money, the consideration for which was that she should not oppose the divorce, is void: Kilborn v. Field, 78 Pa. 194; Irvin v. Irvin, 169 Pa. 529; Mathiot's Est., 243 Pa. 375; Swing v. Munson, 191 Pa. 582; Hoffman v. Hoffman, 30 Pa. 417; Pittsburgh v. Goshorn, 230 Pa. 212.

OPINION BY MR. JUSTICE SADLER, November 23, 1925:

The plaintiff in this case, the divorced wife of defendant, had left the family home by reason of his

---

*The name of the judge disposing of the case in the court below is not given in appellant's brief.  This is a violation of a rule of the Supreme Court.

misconduct. The husband was legally liable for her support, and possessed of ample means with which to provide the same. At the suggestion of his father, an arrangement was entered into to effect this end, and certain shares of stock were deposited with a trustee, the income derived to be applied for the use of plaintiff. It was anticipated that $3,200 a year would be realized, and it was agreed that if the dividends received, after the transfer of the stock, should be in a less amount, stipulated payments would be made by the husband. Prior to the making of the agreement, now the subject of controversy, Mrs. Miller employed an attorney to apply for a divorce, and shortly thereafter a libel was filed, which was followed by the entry of a final decree some months later. Thereupon, the stock referred to was handed over to the plaintiff. No dividends were declared, and the defendant paid the monthly amount agreed upon until January, 1923, and thereafter a small sum. This suit was brought to recover instalments due from that time, as stipulated in the writing of March 12, 1913.

To the amended statement of claim, an affidavit of defense was interposed, raising solely the question of law as to the right to recover upon the contract, averring that the illegality was apparent on its face. It was contended that the real consideration for the promise to pay was the obtaining of a divorce, and therefore the contract was unenforceable as repugnant to public policy. This legal position was sustained by the court below, and judgment entered for the defendant. We are now asked to review the conclusion reached, and do so, having in mind that all material facts averred in the statement shall, for present purposes, be taken as provable, and the benefit of reasonable inferences to be drawn therefrom must be given the plaintiff. It is also to be remembered that any doubt existing, as to the right to summary judgment, shall be resolved in her favor: Rhodes v. Terheyden, 272 Pa. 397.

The contract in dispute sets forth the purpose of the wife to immediately apply for an absolute divorce, and that the husband recognized his legal liability to her for support and maintenance. There follows the provision for the transfer of the stock, before mentioned, to one named, "to be by him held in trust for [the husband] until such time as [his] said wife procures an absolute divorce from [him], within the next eight months, succeeding the date hereof, when and at which time he shall transfer and assign the same to [his] wife absolutely." It is further stipulated that if no divorce is obtained, the securities shall be returned to the settlor, and the agreement also sets forth the understanding as to the amount to be paid if the stock be given to the wife and dividends thereon remain unpaid. Plaintiff avers in the statement filed that this arrangement was made solely to obtain reasonable maintenance, and fixed a sum less than could have been secured from a court of competent jurisdiction, either in a proceeding for nonsupport, or as alimony. It is further claimed, the stipulation referring to a divorce was merely incidental, and was in no way dishonestly entered into for the purpose of facilitating the granting of a decree, or to assure that an application to the court would remain unopposed. In the opinion filed below, it is said that the writing alone must control, and since there was no suggestion of fraud, accident, or mistake in its execution, parol evidence to explain the understanding of the parties was inadmissible. The plaintiff asserts there was no collusion to secure a divorce, and that the facts averred disclose the intention of the parties, negativing the existence of any such purpose, and therefore the contract cannot be properly construed to be one having for its end the performance of an act opposed to public policy, and, as a result, unenforceable.

Family settlements are always favored, and, when made to settle controversies between husband and wife, will be enforced if legally possible: Fishblate v. Fish-

blate, 238 Pa. 450. So agreements for support of one who has withdrawn from the house and family, or made in view of an understanding that the marital ties will be immediately broken, are upheld (Burkholder's App., 105 Pa. 31; Hitner's App., 54 Pa. 110; Dillinger's App., 35 Pa. 357; Hutton v. Hutton, 3 Pa. 100), and the rights of the parties thereunder may now be enforced without the intervention of a trustee: Fennell's Est., 207 Pa. 309; Com. v. Richards, 131 Pa. 209. Such an agreement may properly be entered into to facilitate a disposition of the property between husband and wife (Amspoker v. Amspoker, 155 N. W. 602, 99 Neb. 122), or be executed in consideration of the withdrawal of a proceeding for desertion or nonsupport: Snyder v. Snyder, 57 Pa. Superior Ct. 575. If legally made, and apparently fair and reasonable, compliance with the terms agreed on will be compelled: Frank's App., 195 Pa. 26; Singer's Est., 233 Pa. 55.

It is conceded by both parties here that if the contract had for its sole purpose the securing of a divorce, the agreement would be held contrary to public policy, and therefore inoperative (Mathiot's Est., 243 Pa. 375; Kilborn v. Field, 78 Pa. 194), though this cannot be shown by parol as a defense in an action to enforce its terms, when based on an apparently legal contract, where the purpose is to set up a collateral and collusive understanding in contradiction of the legal consideration expressed: Irvin v. Irvin, 169 Pa. 529; Rodenbaugh v. Rodenbaugh, 17 Pa. Superior Ct. 619. Likewise, an arrangement tending to facilitate the granting of a decree is invalid, and where collusion appears, as shown by a promise not to defend, nor to furnish evidence for the libellant, it cannot be sustained. However, if the facts negative this idea, a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties (13 C. J. 464; 19 C. J. 92; King v. Mollohan, 60 Pac. R. 731, 61 Pac. R. 685 (Kan.), or the causes upon which the application is to be based are by stipulation

limited: Irvin v. Irvin, supra. "According to the weight of authority, bona fide agreements relating to alimony or the adjustment of property rights between the husband and wife, though in contemplation of a divorce, will be upheld if not directly conducive to the procurement of a divorce": 9 R. C. L. 256. "Thus, where a separation has been induced not by collusion but by the vicious conduct or disability of one of the parties without inducement or fault of the other, and it has furnished just grounds for legal separation, then a contract looking to a settlement of property rights and proper maintenance of the one not in fault is in no sense repugnant to public policy": 9 R. C. L. 257. And if an enforceable agreement has been made, the subsequent granting of a decree will not affect the rights acquired: 30 C. J. 1067; Muhr's Est., 59 Pa. Superior Ct. 393.

In the present case, the wife had been compelled to separate by reason of the wrongdoing of the husband, and accepted the provision for her support, as a result of the intervention of his father. Defendant bound himself to pay a less sum than could likely have been obtained in an action for nonsupport, or as alimony, in view of his wealth. The application for divorce was under advisement, prior to the date of the contract, and counsel had been consulted with the intention of instituting the necessary proceeding. If the facts averred in the statement are true, there was no collusion to secure the decree subsequently obtained on valid grounds. The defendant did not in any way bind himself not to present a defense, or agree to furnish evidence or aid the libellant, if she determined to make application for the permanent dissolution of the marriage tie.

The court below was of opinion that the writing itself showed it to be contrary to public policy, and that therefore a suit could not be maintained with it as a basis. It is true plaintiff's case cannot avail where dependent on evidence which discloses solely a written agreement repugnant to public policy and therefore not

sustainable: First Nat. Bank v. Baer, 277 Pa. 184; Pittsburgh v. Goshorn, 230 Pa. 212; Kuhn v. Buhl, 251 Pa. 348. In the present case, the negotiations leading to the making of the writing, and the occurrences at its execution, as set forth in plaintiff's statement, throw light on whether the purpose of the parties was to carry out some illegal and forbidden plan. Parol evidence is admissible to define the subject-matter of the writing, so as to give the terms used their intended effect (Martin v. Berens, 67 Pa. 459; Barnhart v. Riddle, 29 Pa. 92; Aldridge v. Eshleman, 46 Pa. 420), and to establish that the arrangement entered into was legally permissible: Overton v. Tracy, 14 S. & R. 311, 330; M'Kean v. Wagenblast, 2 Grant 462. As was said in Kuhn v. Buhl, supra, p. 373 (quoting from 21 A. & E. Enc. (2d ed.) 1099): "Where a written instrument is attacked upon the ground that the contract is offensive to law and violative of public policy, the whole transaction should be inquired into." Each case must be governed in some degree by its own circumstances: Irvin v. Irvin, supra, p. 545. The words used in a writing do not necessarily control: 13 C. J. 509. "There can be no doubt that the court may look beyond the form into which the parties have cast their contract......In determining the real character of a contract, courts will always look to its purpose" (6 R. C. L. 836), and will find this from a consideration of the written instrument in its entirety, keeping in mind the preliminary negotiations leading to its execution: 6 R. C. L. 837, 839; 13 C. J. 542. In considering the writing, where two interpretations are possible, or the words used may be deemed either as evidence of a valid or legal purpose, or the contrary, the former construction will be accepted: 13 C. J. 539. The mere fact that the evidence offered is in writing does not necessarily justify the court in conclusively determining its meaning. If unaffected by parol evidence, it is within the province of the court to interpret it, but where the question is not on the interpretation of the writing, but

on its effect as evidence of a collateral fact, it is to be submitted to the jury: Reynolds v. Richards, 14 Pa. 205.

Plaintiff is entitled to be heard, and given leave to produce the proposed proof, negativing the suggestion that the contract was entered into in consideration of an agreement to secure a divorce, or to facilitate the granting of one. If this can be satisfactorily done, a recovery may be had, otherwise the defendant must prevail in his contention.

The judgment of the court below is reversed and a procedendo awarded.