## Commonwealth ex rel. Smylie *v.* Smylie, Appellant.

Argued March 26, 1957. Before HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

*Samuel F. Pepper,* with him *Isadore Penn,* for appellant.

*Harry J. Gerber,* for appellee.

OPINION BY WATKINS, J., June 11, 1957:

This is an appeal from an order of the Municipal Court of Philadelphia, allowing a petition for support in the amount of $25 a week. The husband's defense to the action was an agreement which the court below held to be no bar to the action because it was, "conducive to the procuring of a divorce" and so against public policy, and too, it was breached by the husband and was null and void.

The parties were married November 19, 1954 and separated on December 26, 1955. The wife is 62 years of age, the husband older; both were married before. There are no children of this marriage.

The uncontradicted testimony of the wife appellee, that the appellant husband abused her and left her without cause, was accepted by the court below as true.

The husband was engaged in a number of business ventures. Needing capital, he caused his wife to turn over to him, all her assets, consisting of $20,000 in bonds and $1800 in cash. He used the bonds as collateral security in borrowing the sum of $18,000 from the Philadelphia National Bank.

After the desertion of December 26, 1955 the wife filed a bill in equity in the Court of Common Pleas of Philadelphia to secure the return of her assets. On June 6, 1956 the parties entered into a written agreement. The preamble of the agreement said, "wife is contemplating the institution of an action in divorce against husband." By the terms of this agreement the husband agreed to return to his wife the $1800; that $800 of this sum was to be turned over, in escrow, to Harry J. Gerber, Esquire, attorney for the wife, and $1,000, in escrow, to Samuel F. Pepper, Esquire, attorney for the husband; that these funds were to be paid

over to the wife upon the granting of a final decree in divorce.

The agreement also provided that upon execution, the husband would make "immediate arrangements with the Philadelphia National Bank whereby the bank shall forthwith give a letter to Harry J. Gerber, Esquire, informing him that U. S. Treasury bonds will be released . . . . upon the granting of a final decree in divorce."

The wife agreed to assign to her husband, her interest as a wife, in the premises located in Atlantic City, N. J., known as the Nomad Club; and the bill of sale of the business and the deed to the real estate were to be delivered to her attorney, Gerber, who was to deliver the documents when properly signed, to her husband's attorney, Pepper, upon the granting of the final decree in divorce.

The appellant husband sent to attorney Gerber a check in the sum of $800 which was dishonored by the bank. Attorney Gerber never received the letter from the Philadelphia National Bank as provided for in the agreement. On August 30, 1956 the appellee's attorney notified the appellant's attorney, in writing, that "the failure of John Smylie to deposit the escrow monies provided for in his agreement of June 6, 1956, constituted a breach of the terms of that agreement." The letter further said, "so that we may have no misunderstanding in the matter, this is to notify you that unless the terms of the agreement are complied with by John Smylie, on or before Thursday, September 6, 1956, we shall regard this agreement as terminated."

Nothing was done by the appellant to meet the terms of the agreement on or before the date so fixed. Sometime thereafter, in order to obtain his wife's signature to title papers transferring his Atlantic City property, he returned his wife's bonds to her.

The appellant relies solely on this agreement, signed by the parties in contemplation of divorce proceedings, to be instituted by the wife, and depending upon actual granting of a full decree, as a defense to the wife's action. It has been held that such agreements are not per se illegal or contrary to public policy. *Miller v. Miller*, 284 Pa. 414, 131 A. 236 (1925); *Schmoker v. Schmoker*, 359 Pa. 272, 59 A. 2d 55 (1948). However, to interpret this agreement as urged by the appellant, the wife was bound to go through with the divorce proceedings under penalty of forfeiting her right to institute and maintain an action for support. The agreement would then be directly conducive to a procuring of a divorce. Such an interpretation cannot be upheld. *Miller v. Miller*, supra; *Com. ex rel. Miller v. Miller*, 176 Pa. Superior Ct. 64, 106 A. 2d 627 (1954).

We agree with the court below that "when the wife petitioner in this case decided not to institute divorce proceedings she had a right to institute a proceeding for support and the agreement is not a bar to proceedings." In *Com. ex rel. Miller v. Miller*, supra, at p. 67, this Court said, "Bona fide agreements relating to alimony or the adjustment of property rights between husband and wife will be upheld if not directly conducive to the procurement of a divorce. Miller v. Miller, 284 Pa. 414, 131 A. 236. But if the object of the contract is to divorce man and wife, the agreement is against public policy and void: Shannon's Estate, 289 Pa. 280, 137 A. 251. An agreement tending to facilitate the granting of a divorce, although not made primarily for that purpose, is illegal; Commonwealth v. Glennon, 92 Pa. Superior Ct. 94. The court must inquire into the circumstances attending the execution of the agreement relied upon as a defense, and the agreement will be enforced only if it meets the necessary conditions: Commonwealth ex rel. McClenen v. McClenen, 127 Pa. Superior Ct. 471, 193 A. 83."

The contract was null and void by reason of a breach by the appellant. In the contract the use of the words "immediate" and "forthwith" make it obvious that time was of the essence of the agreement. The appellant's failure to procure the letter from the bank and his delivery of a worthless check fully justified the rescission of the agreement by the appellee. This notice of rescission was received by the appellant prior to the transaction involving the Atlantic City property and it is obvious that the return of the bonds then, was not in accordance with the terms of the agreement, but in order to obtain the signature of the appellee to the transfer papers. The agreement provided that when the assets were turned over to the wife that a general release was to be executed in favor of the husband and that the suit in equity should be discontinued. No such release was ever delivered nor the case discontinued and the record fails to disclose that any request was ever made by the appellant that these provisions of the agreement be carried out. It should be noted that the bonds and the cash, which were the subject of the agreement, were the property of the appellee.

Order affirmed.