Pines Plaza Bowling, Inc., v. Rossview, Inc.

Before Smart, Nixon and Lewis, JJ.

*Samuel H. Rosenzweig*, for plaintiff.

*David R. Levin*, for defendant.

LEWIS, J., April 18, 1958.—The present case is before the court en banc on defendant's preliminary objections to plaintiff's complaint in assumpsit.

The facts are as follows:

Plaintiff agreed to lease from defendant space in a shopping center being constructed by defendant. It was plaintiff's intention to install and operate bowling alleys in the leased premises. The lease provided for a term of 20 years from September 1, 1956, to August 31, 1976, at an annual rental of $10,000, to be paid in monthly installments of $833.33. Attached to and made part of the lease agreement were two supplemental riders clearly defining the rights and obligations of the parties. These riders contained seven and 26 clauses, respectively.

The present action in assumpsit was begun by plaintiff lessee, alleging breach of the sixteenth clause of the first supplemental rider which provided that, "the demised premises shall be available for the commencement of the installation of the bowling alleys by Tenant on or before June 1, 1956". Plaintiff alleges that the premises were not made available to it for the installation of the necessary equipment until July 20, 1956, and as a result of such delay, plaintiff was unable to complete the installation of its equipment in time to be open for business on September 1, 1956, and was, in fact, unable to begin the business operations until September 19, 1956. Plaintiff alleges that as a result of this breach of covenant by defendant, plaintiff was unable to start operations on September 1, 1956, the beginning of what plaintiff terms the bowling season, and as a result, suffered loss of profits for the entire year. Plaintiff alleges that success in its business depends upon securing commitments from bowl-

ing leagues or organized groups of bowlers, who agree to use the facilities regularly during the entire season, and that in order to secure this desirable and profitable business it is necessary that the facilities be available on September 1st, which is the start of the season. Plaintiff alleges total damages for loss of profits of $18,434.00.

In addition, plaintiff seeks to recover all rental payments made to defendant during the period September 1956 to September 1957, a total of $10,000.

Plaintiff argues that it is entitled to recover these rental payments by reason of paragraph 7 of the supplemental rider.

The preliminary objections now before the court are actually the second set of objections filed by defendant in this case.

When defendant's preliminary objections to plaintiff's original complaint were argued before the court en banc, it was decided, from the bench, to permit plaintiff to amend his complaint so as to properly allege his items of damages. The court en banc did not pass on the other objections filed by defendant at that time, and we are, therefore, not precluded from considering them at this time even though they are in substance the same objections made to the original complaint.

The gist of the preliminary objections filed by defendant in this case is that plaintiff has failed to set out a cause of action: Pa. R. C. P. 1017(b) (4). It is only in clear cases that judgment can properly be entered summarily on a defendant's demurrer. In Davis v. Investment Land Co., 296 Pa. 449, 452-453, the Supreme Court dealt with the question of when such a judgment is proper.

"In determining whether or not such a [summary] judgment should be or should have been entered [on a demurrer], two rules must always be applied: (1) The

question to be decided is not whether the statement of claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff; and (2) Where a doubt exists as to whether or not summary judgment should be entered, this should be resolved in favor of refusing to enter it. On these points see Rhodes v. Terheyden, 272 Pa. 397; Briggs v. Logan Iron & Steel Co., 276 Pa. 326; Geary v. Schwem, 280 Pa. 435; Steel v. Levy, 282 Pa. 338; Thomas v. Employers Liability Assurance Corporation, 284 Pa. 129, 134; Miller v. Miller, 284 Pa. 414, 416; Gray v. Phila. & Reading Coal & Iron Co., 286 Pa. 11, 14."

Since plaintiff's claims for loss of profits and for rent paid during the first year of the term are based upon different provisions contained in the lease, we shall consider them separately.

We will first discuss plaintiff's claim for loss of profits for the year beginning September 1, 1956. While the lease does provide that the premises are to be made available to plaintiff on or before June 1st to permit the installation of its equipment, paragraph 6 of the rider to the lease provides that: "If the completion of the demised premises should be delayed by labor trouble, building permits, inclement weather, or material shortage beyond the control of the Lessor, a reasonable additional time shall be allowed for completion. *In any event, failure on the part of the Lessor to complete the premises before the date specified herein for the commencement of the term shall not be grounds for cancellation of the Lease by the Tenant, or claim for damages,* provided that the premises are completed within one year thereafter."

The next paragraph (7) of the rider provides that in the event the premises were not completed by Sep-

tember 1, 1956, the term of the lease was to begin on September 1, 1957, and extend for a period of 20 years thereafter.

Plaintiff in its complaint alleges that the demised premises were not made available to it for the installation of bowling alleys until July 20, 1956, and that it was not able to open for business until September 19, 1956. Apparently, plaintiff has continuously conducted its business on the premises since that time. Plaintiff argues that defendant covenanted to make the premises available to it on or before June 1st, and that, as a result of its failure to do so, plaintiff suffered a loss of profits for the entire first year of the term.

In the opinion of this court, paragraph 6 of the rider attached to the lease was designed and intended to prevent just such a suit as this. Plaintiff is unable to overcome the explicit prohibition of any claim for damages based on the failure of defendant to complete the premises prior to the date fixed for the commencement of the term of the lease.

Reading paragraphs 6 and 7 together, there can be no reasonable doubt that the intention of the parties was to prohibit a suit for damages for delay in completion, which would afford protection to the lessor and, at the same time, protect the lessee by granting him the privilege of delaying the start of the term until September 1, 1957.

That this is the only reasonable interpretation of the lease is apparent taking into consideration the nature of the project in which defendant was engaged. At the time this lease was executed, the shopping center of which the demised premises was a part, was still under construction. It is reasonable to assume that defendant was aware of the fact that an undertaking of this nature was subject to many uncertainties making an accurate prediction of the date of completion practically impossible.

The second sentence of paragraph 6 of the rider which provided *that in any event* failure to complete the premises before the date specified for commencement of the term should not be grounds for a claim for damages was obviously intended to protect defendant in the event of unforeseen delays in completion of the building.

Plaintiff argues that paragraph 6 of the rider, hereinbefore referred to, is ambiguous, the meaning of which should be passed upon by a jury.

It is plaintiff's contention that the words "in any event" in the rider means that in the event that the completion of the premises is delayed by labor trouble, building permits, inclement weather or material shortage beyond the control of the lessor, an additional time shall be allowed for completion. And if the completion is not due to any one of the four contingencies, the premises must be ready for occupancy on or before June 1, 1956.

It is true that if the terms of a contract are ambiguous, any doubt or ambiguity must be construed against the party who wrote it and the true meaning decided by the jury and not the court: Home Builders of Mercer County v. Dellwood Corp., 379 Pa. 255.

On the other hand, the interpretation of an agreement which is clear and unambiguous is for the court: Barium Steel Corporation v. Wiley, 379 Pa. 38.

In construing a contract, the agreement must be interpreted as a whole, and the words given their ordinary meaning: Diamond v. Drucker, 177 Pa. Superior Ct. 226.

The ordinary meaning of language throughout the country is given to words used in the contract, unless circumstances show that a different meaning is applicable: Hall Motor Sales, Inc., v. The Studebaker-Packard Corporation, 145 F. Supp. 430.

Words in a contract must be given their ordinary

meaning: Byrne v. Bushkoff, 177 Pa. Superior Ct. 101.

Plaintiff argues that the interpretation of the words "in any event" as used in paragraph 6 of the rider can reasonably refer to the four specified contingencies, or in any event *generally*, and therefore, the words contained in the rider are ambiguous, and it is a matter for a jury to decide.

To adopt the view that the words "in any event" as used in paragraph 6 of the rider could possibly mean that defendant guaranteed the building would be ready for occupancy on June 1st unless he was delayed by labor trouble, building permits, inclement weather or labor shortage, is to read something into paragraph 6 of the rider that obviously is not there.

Giving the words "in any event" their ordinary meaning, we come to the conclusion that regardless of what might cause the delay in completing the premises on the specified date for the commencement of the term, defendant was not to be held liable for damage nor was it grounds for cancellation of the lease.

Webster's International Dictionary, Second Edition, states that the words "in any event" means *at all events, in any case, anyhow.*

If we were to substitute the words "in any case" for the words "in any event", there seems no doubt that it would be crystal clear that defendant was under no obligation to complete the building by June 1, 1956.

We might note in connection with plaintiff's claim for loss of profits that plaintiff has been unable to cite, and research has failed to disclose, any decided Pennsylvania case in which loss of profits of a new business have been held to be recoverable. In the case of Marple Nurseries v. Township of Marple, 35 Del. Co. 400, plaintiff, who had been enjoined from conducting a nursery business on its property brought suit on the injunction bond. Plaintiff sought to recover lost profits. The court held:

"In the instant case, the injunction restrained the defendants from starting up a nursery business which might or might not have turned out to be profitable. Hence the element of reasonable certainty of profits is lacking. As stated in 1 A. L. R. 156 and repeated in 99 A. L. R. 938 '. . . the rule is that prospective profits of a new nonindustrial business or one merely in contemplation are too uncertain and speculative to form a basis for recovery, for the reason that there are no facts extant (provable data of past business) as in the case of an existing business from which the amount of such profits may be estimated with reasonable certainty.' . . .

"There being no evidence pertinent to a legally acceptable measure of damages by which the jury could with reasonable certainty estimate the damages, a nonsuit was properly granted."

It would seem that even if plaintiff was not precluded by paragraph 6 from suing for damages for delay they would still be unable to recover alleged lost profits.

Plaintiff's contention that it is entitled to recover the sum of $10,000, being the amount paid as rent during the first year of the term, is based on the seventh paragraph of the rider attached to the lease which provides:

"In the event that the demised premises are not completed by September 1, 1956, or prior to the start of the bowling season in 1956, the term of the lease will begin on September 1, 1957, and will extend for a full period of twenty years thereafter, subject to all of the terms, conditions, covenants, obligations and remedies provided in this lease with rider, which will thereafter continue in full force and effect."

Plaintiff argues that despite the fact that it entered on the premises, installed its equipment and operated

its business continuously since September 19, 1956, it was not obligated to pay any rent until September 1, 1957. We do not believe that paragraph 7 confers any such right on plaintiff. While plaintiff may have refused to take possession because of the delay, and thus postponed commencement of the term of the lease until September 1, 1957, it is obvious that the parties did not intend to grant rent free occupancy of the premises in the event of a delay in completion. Plaintiff having elected to enter into possession of the premises and begin business operations despite the delay, cannot now be heard to say that such occupancy should be rent free. Acceptance of plaintiff's contention would require the court to give to paragraph 7 a very fanciful interpretation and one not justified by its plain language.

While mindful of the fact that summary judgments should be entered only in cases which are free from doubt, this court is of the opinion that judgment should be entered for defendant in the present case. Plaintiff's case depends upon the interpretation given to the written lease. There being no ambiguous terms in the lease, there is no question involved requiring submission to a jury.

For the reasons given above, it is the opinion of the court that plaintiff has failed to set forth a good cause of action, and judgment will therefore, be entered for defendant.

### Order

And now, to wit, April 18, 1958, after argument, submission of briefs and consideration thereof, it is ordered, adjudged and decreed that the preliminary objections in the nature of a demurrer ex parte defendant be and the same are hereby sustained.

Eo die, exception noted to plaintiff and bill sealed.